IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL HERANDEZ, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-3815 |
| | : | |
| CORRECTIONS EMERGENCY | : | |
| RESPONSE TEAM (CERT), *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**PAPPERT, J.**                                                **September 26, 2018**

Plaintiff Manuel Hernandez,[1] a prisoner currently incarcerated at SCI-

Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against the

Corrections Emergency Response Team (CERT), Secretary John Wetzel,

Superintendent Tammy Ferguson, and John/Jane Doe Defendants.  He alleges that

his constitutional rights were violated in connection with the loss of his legal

property.  Hernandez seeks to proceed *in forma pauperis*.  For the following reasons,

the Court will grant Hernandez leave to proceed *in forma pauperis* and dismiss his

Complaint for failure to state a claim without prejudice to amendment.

I

Hernandez's claims stem from the Pennsylvania Department of Corrections'

movement of prisoners from the now defunct SCI Graterford to the newly

---

[1] Hernandez's name is spelled incorrectly in the caption of his Complaint, as
revealed by his Motion to Proceed *In Forma Pauperis* and Prison Account
Statement.  Accordingly, the Court will direct the Clerk of Court to change the
spelling in the caption.

constructed SCI Phoenix in July of 2018.  According to the Complaint, CERT is a

team of prison staff that, under the direction of Wetzel and Ferguson, moved the

legal and personal property of inmates from SCI Graterford to SCI Phoenix between

July 12th and July 15th.  Hernandez alleges that the

> prisoners were separated from their legal materials and personal property
> and got on the DOC bus one way, [while] CERT took their legal materials,
> paperwork artwork and threw it in the trash bins, nazi signs, nigger,
> penises were written/drawn on photos of dead relatives that had not been
> discarded, wedding band/rings, necklaces/chains, watches, sneakers and
> other property were stolen, remotes were placed in Vaseline and all other
> types of improper and destructive things were done to prisoners property
> outside the presence of prisoners/plaintiff, no inventory of property was
> taken by CERT to issue to prisoners and no confiscation slips were
> provided for all property taken as DOC POLICY requires.

(Compl. at 11.)[2]

When Hernandez's "remaining property" was delivered to his cell at SCI

Phoenix, "it was in a blue bin dumped out of its boxes and footlocker."  (*Id.* at 12.)

Hernandez alleges that he "immediately . . . noticed his legal materials/paperwork

from his criminal case that is still active in the courts was missing."  (*Id.*)  The

Complaint indicates that CERT lost legal materials that Hernandez had paid for—

such as "transcripts, legal pleadings, appeals, briefs, opinions, rulings, receipts for

paying counsel, work product and other documents"—that are related to

Hernandez's post-conviction petition, which he alleges has been pending in state

court since 2012.  (*Id.* at 9.)  It appears Hernandez, who has been convicted of first-

degree murder, may be referring to a post-conviction petition he filed in the

---

[2] The Court adopts the pagination assigned to the Complaint by the CM-ECF
system.

Philadelphia Court of Common Pleas in *Commonwealth v. Hernandez*, Docket No. CP-51-CR-0641321-1992.[3]  The public docket for that case reflects that Hernandez is represented by counsel, and that on September 6, 2018, the judge assigned to his case issued a notice of intent to dismiss the petition.[4]

Hernandez alleges that he grieved the loss or destruction of his property, seeking $50,000.  He also alleges that in light of the number of inmate complaints about CERT's conduct, the grievance process was suspended "to avoid the grievances being placed on the DOC website for the public to view after Defendants Wetzel and Ferguson told the public and Governor Wolf that the transfer and transition process went smoothly."  (Compl. at 10.)  Hernandez alleges that Wetzel "covered up the hateful, unlawful, criminal and unconstitutional actions" committed by the other Defendants.  (*Id.* at 6.)  Hernandez also alleges that Ferguson "covered it up" by "taking funds allotted for programs and services for prisoners for the year to small settlements as a result of the hateful, unlawful, criminal and unconstitutional acts

---

[3] The Complaint references another docket, but the Court could not find that docket while searching Pennsylvania's Unified Judicial System.

[4] The docket also reflects that the petition was based on the Supreme Court's decision in *Miller v. Alabama*, which held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."  567 U.S. 460, 479 (2012). The state court indicated its intent to dismiss the petition because Hernandez was over the age of eighteen at the time he committed the offense.  *See Commonwealth v. Hernandez*, Docket No. CP-51-CR-0641321-1992.

committed by" the other Defendants. (*Id.* at 7.) Hernandez laments the fact that no authorities have investigated the incident and that no media has reported it.[5]

Based on the above allegations, Hernandez filed this lawsuit, claiming that his First, Fourth, Eighth, Ninth, and Fourteenth Amendment rights were violated. Hernandez seeks a declaratory judgment, damages, and appointment of an attorney.

II

The Court grants Hernandez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice.

---

[5] Actually, an article appeared in the local news about the events described in Hernandez's Complaint. Samantha Melamed, *Inmates Allege "Hate Crimes" by Staff at SCI Phoenix, Pennsylvania's Newest Prison*, Philadelphia Inquirer, Sept. 4, 2018, http://www2.philly.com/philly/news/pennsylvania-prison-strike-sci-phoenix-graterford-department-of-corrections-20180904.html.

[6] However, as Hernandez is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*Id.* As Hernandez is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Hernandez's Complaint fails to state a claim.

### A

Some of Hernandez's allegations pertain to general conduct that occurred during the transition, but which did not affect him. "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)). Specifically, "[t]o have standing to bring a claim in federal court, a plaintiff must show, inter alia, that he has 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Marin v. Leslie*, 337 F. App'x 217, 219 (3d Cir. 2009) (per curiam) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Hernandez describes how CERT threw away property and defaced inmates' photographs, but the only allegations specific to him are those concerning the destruction of his legal property. If Hernandez sought to raise claims based on harm suffered by other inmates to their

legal or personal property on account of CERT, he lacks standing to do so. The Court will therefore dismiss any claims based on the Defendants' conduct that did not directly affect Hernandez's property or cause him harm.

B

Hernandez alleges that authorities have not investigated the abuses that occurred during the transfer. However, there is no free-standing right to a government investigation. *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Accordingly, Hernandez cannot state a claim based on authorities' failure to investigate CERT's actions.

C

Hernandez's allegations about the shutting down of the grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, although shutting down the grievance system would affect the analysis regarding whether Hernandez properly exhausted his claims as

6

required by the Prison Litigation Reform Act, it does not provide an independent

basis for a constitutional claim.

D

Hernandez alleges that funds were directed from prison programming toward

settlement of inmates' claims arising from the loss or destruction of property during

the transfer. Hernandez does not provide any additional allegations regarding what

programs were lost or how the loss of those programs harmed him, so he has not

stated a claim based on this generalized allegation. Furthermore, with regard to

decisions about budget and programming, "[s]ubstantial deference must be given to

prison administrators' judgment." *Young v. Beard*, 284 F. App'x 958, 961 (3d Cir.

2008) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The Complaint does

not suggest that prison administrators made a constitutionally impermissible

budgeting or programming choice. The Court will accordingly dismiss this claim.

E

The Court understands Hernandez to be pursuing a claim under the First

Amendment that he was denied access to the courts. "A prisoner making an access-

to-the-courts claim is required to show that the denial of access caused actual

injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting

*Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied

access to the courts must allege an injury traceable to the conditions of which he

complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming

dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies

in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*  Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.  *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Here, Hernandez has alleged that he was deprived of legal materials but he does not describe any injury suffered as a result.  Furthermore, if Hernandez has counsel to pursue his claims in state court, his right to access the courts is satisfied for purposes of that proceeding, even if the loss of his legal materials is unfortunate. The Court will thus dismiss Hernandez's First Amendment claim.

F

Hernandez also has not stated a claim under the Fourth Amendment. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration.").  Accordingly, the events described by Hernandez do not give rise to

a Fourth Amendment claim. *See Kinard v. Bakos*, 566 F. App'x 102, 104 (3d Cir. 2014) (per curiam) (search of confidential legal mail did not give rise to a claim under the Fourth Amendment).

G

The destruction of Hernandez's legal materials also does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* While the Court does not condone the intentional destruction of an inmate's property, the destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, No. 3:15-CV-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, No. CIV.A. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and*

9

*recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).

H

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Court is not aware of any authority that would provide a basis for a claim under the Ninth Amendment for the destruction of an inmate's personal or legal property. Indeed, courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions. *Cf. Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) ("Although there is some authority for the proposition that the Ninth Amendment is a source of fundamental rights . . . no court of which we are aware has held that the Ninth Amendment establishes a right to choose one's cellmate." (internal citation omitted)); *Parnisi v. Colorado State Hosp.*, 992 F.2d 1223 (10th Cir. 1993) (unpublished table decision) (observing that the Ninth Amendment "has never been applied to prevent the denial of medical treatment to prisoners"); *Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (collecting cases). Accordingly, the Court will dismiss Hernandez's Ninth Amendment claims.

I

10

The Court understands Hernandez to be pursuing a due process claim under

the Fourteenth Amendment based on the destruction of his legal property.

However, there is no basis for a due process claim because Pennsylvania law

provides Hernandez with an adequate state remedy. *See Spencer v. Bush*, 543 F.

App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation

of property by a state employee does not constitute a violation of the procedural

requirements of the Due Process Clause of the Fourteenth Amendment if a

meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v.

Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir.

2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an

adequate remedy for a willful deprivation of property). Accordingly, Hernandez has

not stated a basis for a due process claim.

## IV

For the foregoing reasons, the Court will dismiss Hernandez's Complaint for

failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In light of

Hernandez's *pro se* status, the Court will give Hernandez an opportunity to file an

amended complaint in the event he can state a plausible basis for a constitutional

claim. As Hernandez has not yet stated a claim, his request for an attorney is

denied at this time. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in

determining whether appointment of counsel is appropriate, the Court should first

determine whether plaintiff's lawsuit has a legal basis). An appropriate Order

follows.

**BY THE COURT:**


*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**