IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANUEL HERNANDEZ, *Plaintiff,* | : : : | |
| v. | : : | CIVIL ACTION NO. 18-CV-3815 |
| CORRECTIONS EMERGENCY RESPONSE TEAM (CERT), *et al.*, *Defendants.* | : : : : | |

**MEMORANDUM**

**PAPPERT, J.**                                                                                   **OCTOBER 11, 2018**

Currently before the Court is plaintiff Manuel Hernandez's Amended Complaint against the Corrections Emergency Response Team (CERT), Secretary John Wetzel, Superintendent Tammy Ferguson, and John/Jane Doe Defendants. Hernandez raises claims pursuant to 42 U.S.C. § 1983 based on allegations that his constitutional rights were violated in connection with the destruction of his legal property. As Hernandez's Amended Complaint does not cure the defects in his initial Complaint, the Court will dismiss the Amended Complaint for failure to state a claim.

I

Hernandez's claims stem from the Pennsylvania Department of Corrections' movement of prisoners from the now defunct SCI Graterford to the newly constructed SCI Phoenix in July of 2018. According to the initial Complaint, CERT is a team of prison staff that, under the direction of Wetzel and Ferguson, moved the legal and personal property of inmates from SCI Graterford to SCI Phoenix

1

between July 12th and July 15th.  In his initial Complaint, Hernandez alleged that the

> prisoners were separated from their legal materials and personal property and got on the DOC bus one way, [while] CERT took their legal materials, paperwork artwork and threw it in the trash bins, nazi signs, nigger, penises were written/drawn on photos of dead relatives that had not been discarded, wedding band/rings, necklaces/chains, watches, sneakers and other property were stolen, remotes were placed in Vaseline and all other types of improper and destructive things were done to prisoners property outside the presence of prisoners/plaintiff, no inventory of property was taken by CERT to issue to prisoners and no confiscation slips were provided for all property taken as DOC POLICY requires.

(Compl. at 11.)[1]

When Hernandez's "remaining property" was delivered to his cell at SCI Phoenix, "it was in a blue bin dumped out of its boxes and footlocker." (*Id.* at 12.) Hernandez alleged that he "immediately . . . noticed his legal materials/paperwork from his criminal case that is still active in the courts was missing." (*Id.*) The Complaint indicated that CERT lost legal materials that Hernandez had paid for—such as "transcripts, legal pleadings, appeals, briefs, opinions, rulings, receipts for paying counsel, work product and other documents"—that are related to Hernandez's post-conviction petition, which he alleged had been pending in state court since 2012. (*Id.* at 9.) It appeared Hernandez, who has been convicted of first-degree murder, was referring to a post-conviction petition he filed in the Philadelphia Court of Common Pleas in *Commonwealth v. Hernandez*, Docket No. CP-51-CR-0641321-1992.  The public docket for that case indicates that Hernandez was at one point represented by counsel, and that on September 6, 2018, the judge

---

[1] The Court adopts the pagination assigned to the Complaint by the CM-ECF system.

2

assigned to his case issued a notice of intent to dismiss the petition.[2] Hernandez filed a response to the dismissal notice on September 18, 2018.

Hernandez alleged that he grieved the loss or destruction of his property. He also alleged that, in light of the number of inmate complaints about CERT's conduct, the grievance process was suspended "to avoid the grievances being placed on the DOC website for the public to view after Defendants Wetzel and Ferguson told the public and Governor Wolf that the transfer and transition process went smoothly." (Compl. at 10.) Hernandez alleged that Wetzel "covered up the hateful, unlawful, criminal and unconstitutional actions" committed by the other Defendants. (*Id.* at 6.) Hernandez also alleged that Ferguson "covered it up" by "taking funds allotted for programs and services for prisoners for the year to small settlements as a result of the hateful, unlawful, criminal and unconstitutional acts committed by" the other Defendants. (*Id.* at 7.) Hernandez lamented the fact that no authorities investigated the incident.

Based on the above allegations, Hernandez claimed that his First, Fourth, Eighth, Ninth, and Fourteenth-Amendment rights were violated. He sought a declaratory judgment that his rights were violated, damages, and appointment of an attorney.

---

[2] The docket also reflects that the petition was based on the Supreme Court's decision in *Miller v. Alabama*, which held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. 460, 479 (2012). The state court indicated its intent to dismiss the petition because Hernandez was over the age of eighteen at the time he committed the underlying offense. *See Commonwealth v. Hernandez*, Docket No. CP-51-CR-0641321-1992.

In a Memorandum and Order entered on the docket on September 27, 2018, the Court granted Hernandez leave to proceed *in forma pauperis*, dismissed his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and denied his request for an attorney. First, the Court explained that Hernandez lacked standing to raise claims based on general conduct that occurred during the transition, but that did not cause him harm. Second, the Court explained that Hernandez could not state a claim for a constitutional violation based on any failure to investigate CERT's actions, the shutting down of the grievance system, or the direction of funds from prison programming toward settlement of inmates' claims. Third, the Court dismissed Hernandez's First Amendment claim for denial of access to the courts because he failed to describe any actual injury and because, if he was counseled, his right to access the courts was satisfied through counsel. Fourth, the Court rejected Hernandez's Fourth Amendment claim because inmates do not have a legitimate expectation of privacy in their prison cells. Fifth, the Court explained that the destruction of Hernandez's legal property did not give rise to a claim under the Eighth or Ninth Amendments. Sixth, the Court concluded that Hernandez could not state a due process claim based on the destruction of his legal property because Pennsylvania law provided him with an adequate state remedy. The Court gave Hernandez an opportunity to file an amended complaint in the event he could state a claim.

Hernandez filed an Amended Complaint, which essentially duplicates the allegations raised in his initial Complaint. He raises constitutional claims under

the First, Fourth, Eighth, Ninth, and Fourteenth Amendments based on allegations that "CERT destroyed and/or discarded [his] legal materials and paperwork to his pending criminal case (#CP-51-CR-064132101992 presently before Common Pleas Judge Genece E. Brinkley) . . . ."[3] (Am. Compl. at 4.) Hernandez alleges that Wetzel, Ferguson, and the Doe Defendants failed to report CERT's behavior, attempted to cover up for CERT by suspending the grievance process,[4] diverted funds for programming to settlements, and denied his requests for $60,000 to reimburse him for the lost legal property.

II

As Hernandez is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

---

[3] Hernandez also suggests that the Defendants violated DOC regulations, however, the violation of such regulations does not equate to a constitutional claim. *See Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017) ("[A] violation of an internal prison policy does not automatically rise to the level of a constitutional violation.").

[4] An exhibit attached to the Amended Complaint suggests that this allegation refers to a bulletin distributed to inmates explaining that, due to the transition from SCI-Graterford to SCI-Phoenix, the time constraints that normally apply to grievances were suspended during the transition period.

5

Conclusory allegations do not suffice. *Id.* As Hernandez is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

III

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Hernandez's Amended Complaint fails to state a claim for the same reasons his earlier pleading failed.

A

To the extent Hernandez is pursuing a claim that authorities should have investigated the abuses that occurred during the transfer, his claim fails because there is no free-standing right to a government investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Accordingly, Hernandez cannot state a claim based on authorities' failure to investigate CERT's actions.

6

B

Hernandez's allegations about the shutting down of the grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, although shutting down the grievance system or altering the deadlines applying to grievances would affect the analysis regarding whether Hernandez properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim. For the same reason, Hernandez cannot state a constitutional claim based on his dissatisfaction with the manner in which his grievance was handled.

C

Hernandez again alleges that funds were directed from prison programming toward settlement of inmates' claims arising from the loss or destruction of property during the transfer. Hernandez does not provide any additional allegations regarding what programs were lost or how the loss of those programs harmed him, so he has not stated a claim based on this generalized allegation. Furthermore, with regard to decisions about budget and programming, "[s]ubstantial deference must be given to prison administrators' judgment." *Young v. Beard*, 284 F. App'x 958, 961 (3d Cir. 2008) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The Complaint, as pled, does not suggest that prison administrators made a

7

constitutionally impermissible budgeting or programming choice, so the Court will dismiss this claim.

D

Hernandez again appears to be pursuing a claim under the First Amendment that he was denied access to the courts in connection with the destruction of his legal property. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Here, Hernandez has alleged that he was deprived of legal materials and generally alleges that he was injured, but he does not specifically describe how the

8

loss of his legal materials impeded his ability to pursue his post-conviction petition. Indeed, the state court's docket reflects that Hernandez was able to file a response to the court's dismissal notice. Furthermore, if Hernandez was an adult at the time he committed the crime for which he has been convicted, it is not clear how he could take advantage of *Miller v. Alabama*, 567 U.S. 460, 479 (2012), which applies only to juveniles, regardless of what materials he had available to review. Additionally, if Hernandez has counsel to pursue his claims in state court, his right to access the court is satisfied for purposes of that proceeding, even if the loss of his legal materials is unfortunate. Accordingly, the Court will dismiss Hernandez's First Amendment claim.

E

Hernandez has again failed to state a claim under the Fourth Amendment. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."). Accordingly, the events described by Hernandez do not give rise to a Fourth Amendment claim. *See Kinard v. Bakos*, 566 F. App'x 102, 104 (3d Cir. 2014) (per curiam) (search of confidential legal mail did not give rise to a claim under the Fourth Amendment).

F

The destruction of Hernandez's legal materials also does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* While the Court does not condone the intentional destruction of an inmate's property, the destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, No. 3:15-CV-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, No. CIV.A. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).

G

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. This Court is not aware of any authority that would provide a basis for a claim under the Ninth Amendment based on the destruction of an inmate's personal or legal property. Indeed, courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions. *Cf. Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) ("Although there is some authority for the proposition that the Ninth Amendment is a source of fundamental rights . . . no court of which we are aware has held that the Ninth Amendment establishes a right to choose one's cellmate." (internal citation omitted)); *Parnisi v. Colorado State Hosp.*, 992 F.2d 1223 (10th Cir. 1993) (unpublished table decision) (observing that the Ninth Amendment "has never been applied to prevent the denial of medical treatment to prisoners"); *Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (collecting cases). Accordingly, the Court will dismiss Hernandez's Ninth Amendment claims.

H

Hernandez again appears to be pursuing a due process claim under the Fourteenth Amendment based on the destruction of his legal property. However, there is no basis for a due process claim because Pennsylvania law provides Hernandez with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209,

213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Hernandez has not stated a basis for a due process claim.

IV

For the foregoing reasons, the Court will dismiss Hernandez's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). As it appears that Hernandez cannot cure the defects in his claims, the Court concludes that further attempts at amendment would be futile. An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**